IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JACKIE CLEMENTS                                                                              PLAINTIFF

vs.                                          Civil No. 4:15-cv-04089

CAROLYN COLVIN                                                                             DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Jackie Clements ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 7.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed his application for DIB benefits on February 9, 2012. (Tr. 146, 230-238). Plaintiff alleges being disabled due to arthritis, heart inflammation, and pleurisy. (Tr. 263). Plaintiff alleges an onset date of January 1, 2009. (Tr. 146). This application was denied initially and again upon reconsideration. (Tr. 170-176). Thereafter, Plaintiff requested an administrative hearing on his application, and this hearing request was granted. (Tr. 185-186).

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

1

An administrative hearing was held on May 23, 2013. (Tr. 52-84). At the administrative hearing, Plaintiff was present and was represented by counsel, Greg Giles. *Id.* Plaintiff and Vocational Expert ("VE") Jerold Hildre testified at this hearing. *Id.* On the date of this hearing, Plaintiff was thirty-seven (37) years old and had an eighth grade education. (Tr. 56).

On April 18, 2014, subsequent to the hearing, the ALJ entered an unfavorable decision on Plaintiff's application. (Tr. 146-164). In this decision, the ALJ determined the Plaintiff met the insured status of the Act through December 31, 2013. (Tr. 149, Finding 1). The ALJ also determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2009. (Tr. 149, Finding 2).

The ALJ determined Plaintiff had severe impairments of osteoarthritis of the knees, costochondritis, depressive disorder, not otherwise specified (NOS), and anxiety disorder, NOS. (Tr. 149, Finding 3). The ALJ also determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 150, Finding 4)

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC"). (Tr. 151-162, Finding 5). First, the ALJ indicated he evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) ) in that he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours in an 8 hour workday, and stand and/or walk for about 2 hours in an 8-hour workday. He is limited in pushing and/or pulling (including the operation of hand and/or foot controls) with his lower extremities. He can occasionally climb ramps or stairs, but no ladders, ropes or scaffolds. He has no other postural limitations. He should avoid hazards, such as dangerous moving machinery or unprotected heights. He has no manipulative, visual, or communicative limitations. From a mental standpoint, he maintains the ability to

2

>learn, understand, remember, and carry out simple work-related instructions and tasks, and in such a work setting and environment: can use judgment in making simple work related decisions; can respond and relate appropriately to others, such as supervisors and co-workers; can maintain attention and concentration for at least two hour intervals; and, can adapt to and deal with simple changes in work settings and environments.

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 162, Finding 6). The ALJ found Plaintiff was unable to perform his PRW. *Id.* The ALJ, however, also determined there was other work existing in significant numbers in the national economy Plaintiff could perform. (Tr. 163, Finding 10). The ALJ based his determination upon the testimony of the VE. Id. Specifically, the VE testified that given all Plaintiff's vocational factors, a hypothetical individual would be able to perform the requirements of a representative occupation such as a laundry folder with approximately 2,400 such jobs in Arkansas and 165,000 such jobs in the nation, bench assembler with approximately 1,300 such jobs in Arkansas and 500,000 such jobs in the nation, and parking lot cashier with approximately 3,400 such jobs in Arkansas and 139,000 such jobs in the nation. Id. Based upon this finding, the ALJ determined Plaintiff had not been under a disability as defined by the Act since January 1, 2009, through the date of the decision. (Tr. 164, Finding 11).

Thereafter, Plaintiff requested the Appeals Council review the ALJ's decision. (Tr. 141). *See* 20 C.F.R. § 404.968. The Appeals Council declined to review this unfavorable decision. (Tr. 1-7). On September 14, 2015, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on September 16, 2015. ECF No. 7. Both Parties have filed appeal briefs. ECF Nos. 13, 16. This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g)

(2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the

claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### 3. Discussion:

In his appeal brief, Plaintiff claims the ALJ's disability determination is not supported by substantial evidence in the record.  ECF No. 13, Pg. 3-19.  Specifically, Plaintiff claims the ALJ erred (1) in failing to find Plaintiff met a Listing, (2) in determining Plaintiff's RFC, and (3) by failing to properly consider the opinions of Plaintiff's treating physicians.  *Id.*  In response, the Defendant argues the ALJ did not err in any of his findings.  ECF No. 16.  Because this Court finds the ALJ erred in the RFC determination of Plaintiff, this Court will only address this issue.

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)).

In social security cases where a mental impairment is alleged, it is important for an ALJ to

evaluate a claimant's Global Assessment of Functioning ("GAF") score in determining whether that claimant is disabled due to the claimed mental impairment. GAF scores range from 0 to 100. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed., text rev. 2000). The Eighth Circuit has repeatedly held that GAF scores (especially those at or below 40) must be carefully evaluated when determining a claimant's RFC. *See, e.g., Conklin v. Astrue,* 360 F. App'x. 704, 707 (8th Cir. 2010) (reversing and remanding an ALJ's disability determination in part because the ALJ failed to consider the claimant's GAF scores of 35 and 40); *Pates-Fires v. Astrue,* 564 F.3d 935, 944-45 (8th Cir. 2009) (holding that the ALJ's RFC finding was not supported by substantial evidence in the record as a whole, in part due to the ALJ's failure to discuss or consider numerous GAF scores below 50).

Indeed, a GAF score at or below 40 should be carefully considered because such a low score reflects "a major impairment in several areas such as work, family relations, judgment, or mood." *Conklin,* 360 F. App'x at 707 n.2 Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed., text rev. 2000)). A GAF score of 40 to 50 also indicates a claimant suffers from severe symptoms. Specifically, a person with that GAF score suffers from "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed., text rev. 2000).

On January 21, 2011, Plaintiff had a consultative Mental Diagnostic Evaluation. (Tr. 356-363). Plaintiff was diagnosed with major depressive disorder. (Tr. 361). Plaintiff's then current GAF score was 50-60, with a low estimated at 40 and high of 65 in the past year. *Id.* On July 3,

2012, Plaintiff had another Mental Diagnostic Evaluation performed by Dr. David Grant.  (Tr. 917-920).  Plaintiff was diagnosed with panic disorder, anxiety disorder, depressive disorder and had social and occupational problems.  (Tr. 919).  Plaintiff also had a GAF score of 50-55. *Id*.

Following the administrative hearing, on June 6, 20013, Plaintiff was seen by Dr. Betty Feir. (Tr. 1077-1085).  Plaintiff was diagnosed with major depressive disorder and had a GAF score of 45. (Tr. 1080).  Plaintiff also had a full score IQ of 57. *Id.*  Although Dr. Feir felt this score might be an underestimate of his true ability, she went on to state his true ability might fall in the borderline range. *Id.*  Dr. Feir also completed a Mental RFC Assessment indicating Plaintiff had significant mental and emotional problems and was markedly impaired in socializing and concentration, persistence and pace.  (Tr. 1081-1084).

The ALJ did set out a limited discussion of these GAF scores, but did little more than to mention them.  It was the ALJ's responsibility to properly evaluate those GAF scores and make a finding regarding their reliability as a part of the underlying administrative proceeding. *See Conklin,* 360 F. App'x at 707.  Indeed, it is especially important that the ALJ address low GAF scores where, as in this case, Plaintiff has been diagnosed with panic disorder, anxiety disorder, and depressive disorder.  Accordingly, because the ALJ was required to evaluate these scores and provide a reason for discounting the low GAF scores but did not do so, Plaintiff's case must be reversed and remanded for further development of the record on this issue. *See Pates-Fires,* 564 F.3d at 944-45.

Further, on remand, additional review and discussion should be done regarding Dr. Feir's findings and specifically the very low IQ score of Plaintiff.

### 4. **Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits

to Plaintiff, must be reversed and remanded.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 8th day of August 2016.**

>/s/   Barry A. Bryant
>HON. BARRY A. BRYANT
>U.S. MAGISTRATE JUDGE